## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STEPHEN L. GURBA,

     Plaintiff,

v.                                   Case No: 8:20-cv-2713-CEH-CPT

PEOPLESBANK, CRAIG
KAUFFMAN and AMY DOLL,

     Defendants.

_____/

## **O R D E R**

This cause comes before the Court upon PeoplesBank, Craig Kauffman, and Amy Doll's Dispositive Motion of Defendants to Dismiss Counts II through VII of Plaintiff's Second Amended Complaint (Doc. 57). Stephen L. Gurba responds in opposition (Doc. 61) and PeoplesBank, Kauffman, and Doll reply (Doc. 64).

Together with Richard Welkowitz, Stephen L. Gurba borrowed over $8 million from a Pennsylvania bank. As collateral for this loan, Welkowitz offered a 1959 Ferrari Testa Rossa that was worth between $45 million and $50 million. After Welkowitz died, the bank sought to collect from Gurba. A valuation revealed that the Ferrari was simply a "reproduction" vehicle—a "modern interpretation of the vintage experience with usage of Ferrari components." The vehicle sold at auction for only $209,000. Gurba now sues the bank and two of its officers for, in relevant part, breach of fiduciary duty and fraud in the inducement. These defendants move to dismiss those claims on several grounds, including a forum-selection clause, lack of personal jurisdiction, and

failure to state a claim. For the reasons set forth below, the Court will grant-in-part and deny-in-part the Motion to Dismiss.

## I.   FACTUAL BACKGROUND[1]

In August or September of 2019, Richard Welkowitz informed Stephen L. Gurba that he needed to obtain a loan and that he wanted Gurba to serve as a co-borrower for the loan. Doc. 50 ¶¶12, 21. Welkowitz sought to obtain an $8,040,000 loan from PeoplesBank, a Pennsylvania bank. *Id.* at ¶¶12, 20, 66, 78, 91, 104, 119, 136. He had previously conducted "numerous deals" with PeoplesBank and knew Craig Kauffman, the president and chief executive officer of PeoplesBank, because he had brought in millions of dollars in business for another bank of which Kauffman had served as president. *Id.* at ¶¶12–13, 79, 83, 105, 121. Similarly, PeoplesBank had previously served as a party to loans for trucking companies—described as the "Big Red Trucking Companies"— of which Gurba served as manager and president. *Id.* at ¶¶16–17. PeoplesBank had "taken on prior loans from other lenders" for "the trucking business" involving Gurba and Welkowitz, too. *Id.* at ¶17. As such, Gurba was an existing client of PeoplesBank. *Id.* at ¶16.

---

[1] When ruling on a motion to dismiss under Rule 12(b)(6), the Court derives the statement of facts from the factual allegations of the plaintiff's complaint, which the Court must accept as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). With limited exceptions, the Court cannot look outside the pleadings in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d). Here, however, PeoplesBank, Kauffman, and Doll move to dismiss claims in the Second Amended Complaint not only under Rule 12(b)(6), but also under *forum non conveniens* and lack of personal jurisdiction under Rule 12(b)(2). For the sake of simplicity, the Court derives this factual background statement from the Second Amended Complaint's allegations, unless stated otherwise. To the extent that the Court considers evidence and derives facts from that evidence, the Court discusses those facts in its analysis.

As collateral for the loan, Welkowitz offered a 1959 Ferrari Testa Rossa. *Id.* at ¶¶21, 66, 78, 91, 104, 119, 136. He represented to Gurba, PeoplesBank, and PeoplesBank Chief Lending Officer Amy Doll that the Ferrari had been appraised at over $40 million. *Id.* at ¶23. Indeed, Welkowitz had ordered an appraisal of the Ferrari, which valued the Ferrari at an amount between $45 million and $50 million. *Id.* at ¶¶69, 82, 95, 108, 125, 142. Welkowitz assured Gurba that the Ferrari would "vastly collateralize" the loan such that Gurba would not face any exposure for serving as a cosigner on the loan and that the Ferrari "would cover any issue of default" under the loan. *Id.* at ¶¶21, 66, 78, 91, 104, 119, 136.

Kauffman and Doll "entice[d] and assure[d]" Gurba that he would not be liable under the loan "due to the collateral that was being represented." *Id.* at ¶¶67, 80, 93, 105, 120–122, 137–139. They explained to Gurba that he would not face any liability under the loan because the Ferrari "more th[a]n covered" him. *Id.* at ¶¶22, 67, 80, 105, 122, 139. PeoplesBank, through Doll under Kauffman's "complete supervision," or with Kauffman otherwise "involved," also advised Gurba that it would arrange for an independent appraisal of the Ferrari, but an independent appraisal never occurred. *Id.* at ¶¶24, 69, 71, 82, 84, 95, 97, 108, 111, 125, 127, 142, 145. PeoplesBank never intended to direct an independent appraisal of the vehicle. *Id.* at ¶¶110, 127, 144. Although Doll and Kauffman represented to Gurba that the Ferrari constituted sufficient collateral, PeoplesBank, Doll, and Kauffman failed to "undert[ake] any diligence whatsoever." *Id.* at ¶¶71, 84, 94, 97, 111, 128, 145. Based upon Welkowitz's assurances, the purported appraisal, the assurances that PeoplesBank would conduct

an independent appraisal, and Kauffman's and Doll's assurances that Gurba "was completely covered and could not be liable for any of the loan amount," Gurba signed the $8,040,000 loan as a co-borrower on September 30, 2019. *Id.* at ¶¶25, 29, 74, 87, 100, 132, 149. By signing the documents, he "gave a confession of judgment in the event of default, consenting to judgment and other matters" in Pennsylvania. *Id.* at ¶¶115, 132, 149.

Mere months later, Welkowitz committed suicide. *Id.* at ¶36. PeoplesBank then sought to collect the debt from Gurba. *Id.* at ¶37. Mecum Auto Auctions was retained to sell the 19 automobiles in Welkowitz's collection, including the Ferrari, in an auction. *Id.* at ¶38. Before the auction, Mecum conducted a valuation of the Ferrari. Unfortunately, Mecum discovered that the vehicle was not worth millions. *Id.* Instead, it was a "reproduction vehicle." *Id.* at ¶¶38, 72, 85, 98, 112, 129, 146.  Mecum's description on the auction website summarized this distinction:

> Finished in the style of a 1959 Ferrari 250 Testa Rossa, this professionally built Barchetta painted in Rosso Corsa has a V-12 engine with Electromotive engine controls, a manual transmission, 4-wheel Wilwood brakes and bright knock-off wire wheels with Michelin tires, which, together, all make for an incredible road car for today. Offered here is a modern interpretation of the vintage experience with usage of Ferrari components to fulfill the dream.
>
> . . .
>
> Considering the original 250 Testa Rossa race cars are valued by price guides in the $40 million to $50 million range, this custom build can be purchased for a small fraction of the cost.

*Id.* at ¶36.

4

During the auction in July of 2020, the vehicle sold for approximately $209,000. *Id.* at ¶40. After accounting for Mecum's auction commissions, $170,000 was applied to the amount due under the loan. *Id.* Because the remainder of the loan was in default, PeoplesBank pursued Gurba for the balance of the debt. *Id.*

In June of 2020, PeoplesBank filed an affidavit in Pinellas County, Florida, which related to a foreign judgment in Pennsylvania. *Id.* at ¶42. The foreign judgment was entered upon a "confession," and Gurba did not receive any notice of the action or the entry of the foreign judgment. *Id.* at ¶44. Gurba filed an action challenging the foreign judgment in the Circuit Court for Pinellas County, Florida. *Id.* at ¶46.

## II.   PROCEDURAL DEVELOPMENT AND CLAIMS

Gurba now sues PeoplesBank, Kauffman, and Doll (Doc. 50). With PeoplesBank's consent, Kauffman and Doll removed the action to this Court on the basis of diversity jurisdiction. Doc. 1 at 1, 4. In the Second Amended Complaint, Gurba brings seven claims: (1) a claim against PeoplesBank for stay and defense of enforcement of a foreign judgment under Florida Statute § 55.509 (Count I); a claim for breach of fiduciary duty against PeoplesBank (Count II); a claim for breach of fiduciary duty against Kauffman (Count III); a claim for breach of fiduciary duty against Doll (Count IV); a claim for fraud in the inducement against PeoplesBank (Count V); a claim for fraud in the inducement against Kauffman (Count VI); and a claim for fraud in the inducement against Doll (Count VII). Doc. 50 ¶¶ 53–152.

Relevant here, Gurba alleges that Kauffman and Doll, as "top bank officer[s]," owed a fiduciary duty to Gurba, a client of PeoplesBank. *Id.* at ¶¶83, 96. He also alleges

5

that PeoplesBank, through Doll and Kauffman, maintained a fiduciary relationship with him "through numerous other loan instances" between the PeoplesBank and entities "related to" him and Welkowitz. *Id.* at ¶¶83, 96, 109. As a result, Gurba was "owed certain duties of trust and reliance" because he was a client of PeoplesBank. *Id.* at ¶18. Kauffman and Doll allegedly had a fiduciary relationship with Gurba as a result of the "other loan instances," too. *Id.* at ¶¶83, 96, 109. He alleges that PeoplesBank, Kauffman, and Doll breached their fiduciary duties to Gurba, as a client of PeoplesBank, through the described assurances of Kauffman and Doll. *Id.* at ¶¶76, 89, 102.

Further, he states that PeoplesBank "conducted and acted in a fraudulent manner towards [him] in order for him to enter into" the loan by the assurances of Kauffman and Doll. *Id.* at ¶117. Similarly, he alleges that Doll, by offering the described assurances above "through" Kauffman and "at his direction and knowledge," "conducted and acted in a fraudulent manner towards [Gurba] in order for him to enter into" the loan. *Id.* at ¶¶134, 151.

PeoplesBank has answered Count I (Doc. 54) and now, with Kauffman and Doll, moves to dismiss the remaining claims (Doc. 57). Gurba responds in opposition (Doc. 61) and PeoplesBank, Kauffman, and Doll reply (Doc. 64). The Court stayed this action pending a ruling on the Motion to Dismiss (Doc. 72).

## III.   DISCUSSION

In seeking dismissal, PeoplesBank, Kauffman, and Doll argue that: (1) the Loan Agreement's forum-selection clause requires the Court to dismiss Counts II through

VII; (2) the Court must dismiss the claims against Kauffman and Doll under Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them; (3) res judicata bars Counts II through VII; (4) the integration clauses in the Note and the Loan Agreement bar Counts II through VII; (5) and Gurba fails to state claims for breach of fiduciary duty in Counts II through IV. Doc. 57 at 3–25. The Court addresses each of these arguments.

### A. The Forum-Selection Clause Does Not Cover Counts II through VII

PeoplesBank, Kauffman, and Doll argue that the Court must dismiss Counts II through VII based on the forum-selection clause in Section 9.20 of the Business Loan and Security Agreement (the "Loan Agreement"). *Id.* at 3–10. They contend that the forum-selection clause required Gurba to assert Counts II through VII in the Court of Common Pleas for York County, Pennsylvania. *Id.* at 4. In addition to asserting that the clause is valid and mandatory, they argue that PeoplesBank and its officers— Kauffman and Doll—may enforce the clause and that Counts II through VII fall within the clause's scope. *Id.* at 4–10. Gurba responds that the forum-selection clause is a "nullity" because he was "enticed to enter into the Note under representations of fraud." Doc. 61 at 2. He argues that the alleged fraud "fall[s] well outside the actual Note." *Id.* He contends that PeoplesBank "ha[s] submitted to jurisdiction in Florida." *Id.* at 3. PeoplesBank, Kauffman, and Doll reply that merely alleging fraud in the underlying transaction does not avoid a forum-selection clause and that domesticating a sister state judgment does not waive a forum-selection clause. Doc. 64 at 2.

PeoplesBank, Kauffman, and Doll ground their forum-selection-clause attack in *forum non conveniens*. Doc. 57 at 4. The appropriate mechanism for enforcing a forum-selection clause that points to a state forum is the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx.*, 571 U.S. 49, 60 (2013). 28 U.S.C. § 1404(a), which codifies the doctrine of *forum non conveniens* for those cases in which the transferee forum is within the federal-court system, has no application for cases calling for a nonfederal forum, "but the residual doctrine of *forum non conveniens* has continuing application in federal courts." *Id.* at 60–61.

Here, the forum-selection clause in Section 9.20 of the Loan Agreement provides: "Any litigation arising from this Agreement or any documentation referred to in this Agreement shall be commenced only in the Court of Common Pleas of York County, Pennsylvania."[2] Doc. 57-1 at 31. In turn, the Loan Agreement refers to, among other documents, the Loan Agreement itself, the Note, and the Security Agreement. *Id.* at 20. Thus, the forum-selection clause points to a state forum.

### i. Neither Fraud nor Overreaching Induced the Forum-Selection Clause's Formation, and Kauffman and Doll May Enforce the Clause

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable

---

[2] Because PeoplesBank, Kauffman, and Doll argue here that the Court must dismiss the claims under *forum non conveniens*, the Court may look outside the pleadings to consider the Loan Agreement. *See Pelletier v. WMT Hous., LLC*, No. 3:18-cv-601-BJD-JBT, 2019 WL 13144190, at *2 n.4 (M.D. Fla. Mar. 4, 2019) (explaining that no published opinion of the Eleventh Circuit addresses whether a party may use Rule 12(b)(6) to enforce a forum-selection clause and emphasizing that, under Supreme Court precedent, *forum non conveniens* is the proper mechanism for enforcing a forum-selection clause).

under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). "[T]he party attempting to invalidate a forum-selection clause has a heavy burden of proof." *Xena Invs., Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1284 (11th Cir. 2013). A court will invalidate a forum-selection clause when "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281.

For a court to invalidate a forum-selection clause because fraud or overreaching induced the clause's formation, "a plaintiff must specifically allege that the clause was included in the contract at issue because of fraud." *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)) (rejecting the argument that fraud or overreaching supported nonenforcement of a forum-selection clause because the plaintiffs failed to allege that the clause was included in the contract because of fraud); *see St. Francis Holdings, LLC v. Cynosure, Inc.*, No. 8:20-cv-1101-WFJ-AAS, 2020 WL 9601509, at *3 (M.D. Fla. Sept. 23, 2020) ("The Eleventh Circuit is clear that courts can invalidate a forum-selection clause on the basis of fraud only when the plaintiff shows the clause itself was fraudulently included in the contract."); *Carrigg v. Gen. R.V. Ctr., Inc.*, No. 3:18-cv-654-MMH-PDB, 2018 WL 5904447, at *7 (M.D. Fla. Nov. 9, 2018) (stating that "fraud or overreaching" basis pertains to the incorporation of the

clause itself and rejecting the plaintiffs' argument that the-forum selection was invalid because their entire sales transaction was the product of fraud and overreaching).

Here, Gurba fails to allege in the Second Amended Complaint that the forum-selection clause itself is a product of fraud or overreaching. Instead, he merely alleges that PeoplesBank, Kauffman, and Doll acted fraudulently, through the assurance of Kauffman and Doll, to entice him to enter into the Loan Agreement. His allegations do not even mention the forum-selection clause. Similarly, his response to the Motion to Dismiss focuses only on the Note, not the forum-selection clause itself. For example, he argues that the forum-selection clause is a "nullity" because he "was enticed to enter into the Note under representations of fraud." Doc. 61 at 2. To support his attack on the Note, rather than the forum-selection clause itself, he points to his declaration and 297 pages of e-mails, both of which he attached to his previous response to an earlier motion to dismiss, not his operative response. *Id.* at 3–4. PeoplesBank, Kauffman, and Doll do not object to his reliance on these materials, even though Gurba fails to attach them to his operative response. Nonetheless, they provide no assistance to Gurba, as he offers them in support of his attack on the Note, not the forum-selection clause. Further, the declaration does not address the forum-selection clause, and Gurba does not pinpoint any portion of the 297 pages of e-mails which show that fraud or overreaching formed the forum-selection clause. Therefore, Gurba fails to establish a "strong showing" that enforcement of the clause would be unfair or unreasonable.[3]

---

[3] Gurba points out that a court may refuse to enforce a forum-selection clause if enforcement of the clause would contravene public policy. Doc. 61 at 3. He broadly contends that *forum*

The Court also must determine whether Kauffman and Doll may enforce the forum-selection clause. As alleged, both Kauffman and Doll were officers of PeoplesBank at all material times—Kauffman served as the president and chief executive officer, and Doll served as the chief lending officer. The Loan Agreement was between PeoplesBank, Welkowitz, and Gurba. Doc. 57-1 at 14, 32–33. Doll signed the Loan Agreement on behalf of PeoplesBank, noting her position as "Sr. Vice President/Chief Lending Officer." *Id.* at 33. Kauffman did not sign it.

Certainly, PeoplesBank may enforce the forum-selection clause, as it signed the Loan Agreement. Kauffman and Doll argue that they also may enforce the forum-selection clause because they "are sufficiently related to PeoplesBank to entitle them to invoke" the clause. Doc. 57 at 8. Gurba does not offer any argument in opposition.

Federal law, not state law, governs consideration of whether to enforce a forum-selection clause in a diversity action. *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *see Collins On Behalf of Herself v. Mary Kay, Inc.*, 874 F.3d 176, 181 n.3 (3d Cir. 2017) ("The majority of our sister circuits also apply federal law when deciding whether to enforce a forum selection clause."); *see also* 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3803.1 (4th ed. 2013) ("A

---

*non conveniens* "should not apply given this situation and the torts of the Defendants involved." *Id.* at 4. However, he does not clearly articulate any public policy that overcomes the significant obstacles to finding a forum-selection clause invalid for contravening public policy. *See McCoy v. Sandals Resorts Int'l, Ltd.*, No. 19-cv-22462-Bloom/Louis, 2019 WL 6130444, at *9 (S.D. Fla. Nov. 19, 2019) (explaining, in analyzing a forum-selection clause, that courts must exercise "great caution" in declaring a contract void as contravening public policy and only in those cases free from "substantial doubt") (internal quotation marks omitted)

question of obvious importance in diversity of citizenship cases is what law—state or federal—shall govern on the question of whether a forum selection clause is enforceable. It seems rather clear that federal law should govern.").

The Eleventh Circuit has affirmed a district court's holding that two individuals could enforce a forum-selection clause in an agreement, even though they were not signatories to the agreement. *Xena Invs.*, 726 F.3d at 1285. In *Xena*, the district court held that the principal decisionmaker of Defendant Magnum Fund Management—an entity that was a party to the agreement with the plaintiff—could enforce an agreement's forum-selection clause, even though he was a non-signatory, because: (1) his capacity with Magnum Fund provided him with interests directly related to, and derivative of, Magnum Fund's interests; (2) he was "closely related" to the dispute, as the plaintiff alleged that his material misrepresentations led to them entering into the agreement; and (3) those misrepresentations resulted in him being "very close to this dispute" because, had they not occurred, the dispute would not have been before the Court. *Xena Invs. Ltd. v. Magnum Fund Mgmt. Ltd.*, No. 11-21065-CIV-Graham/Goodman, 2011 WL 13133975, 2011 WL 13133975, at *5 (S.D. Fla. Sept. 14, 2011). Similarly, the district court held that the president of Magnum U.S. Investments, which performed certain functions on behalf of Defendant Magnum but was not a party to the agreement, could enforce the forum-selection clause, even though he was a non-signatory, because: (1) while the president's interests, if any, were not as closely related to the transaction as the principal decisionmaker's interests, the president was still "closely related" to the dispute; and (2) the plaintiff had alleged that

12

the president offered material misrepresentations and that those misrepresentations led to the execution of the agreement; and (3) the plaintiff alleged that without the misrepresentations of the president and the other defendant, it would not have entered into the agreement with the forum-selection cause. *Id.* The Eleventh Circuit affirmed the enforcement of the forum-selection clause by "the closely-related parties." *Xena Invs.*, 726 F.3d at 1285.

As such, district courts within the Eleventh Circuit have allowed non-signatories to agreements with forum-selection clauses to enforce those clauses. *See, e.g.*, *Schrenkel v. LendUS, LLC*, No. 2:18-cv-382-JES-CM, 2018 WL 5619358, at *8 (M.D. Fla. Oct. 30, 2018) (holding that the defendant-signatory's chief executive officer, who signed the agreement only in his capacity as a corporate representative, could enforce the agreement's forum-selection clause because he was "sufficiently closely related" to the agreement to enforce the clause and it was foreseeable that any claims related to the agreement against him individually would fall within the clause's scope, given that he signed as a corporate representative); *Elite Advantage, LLC v. Trivest Fund IV, L.P.*, No. 15-22146-CIV, 2015 WL 4982997, at *7 (S.D. Fla. Aug. 21, 2015) (holding that a signatory's owner and its board chairman, who also served as the executive owner and director of the signatory's owner, could enforce a forum-selection clause in an agreement, despite not signing the agreement, because it was foreseeable that they would enforce the forum-selection clause since they controlled the signatory's decisions, which the plaintiffs challenged).

Kauffman may enforce the forum-selection clause. Kauffman is closely related to the dispute, as Gurba alleges that Kauffman, as president and chief executive officer of PeoplesBank, together with Doll, enticed Gurba into entering into the Loan Agreement, assured him that he would not be liable under the loan due to the represented collateral, and told him that he would not face any liability under the loan because the Ferrari more than covered him. Additionally, Gurba alleges that under Kauffman's supervision, or with Kauffman involved, Doll advised Gurba that PeoplesBank would arrange for an independent appraisal of the Ferrari. Like the cases above, Gurba even alleges that he signed the Loan Agreement as a result of Kauffman's assurances, in part. Although Kauffman denies advising Gurba "that he need not worry about personal liability or that [PeoplesBank] would look solely to the collateral," his declaration reinforces that he is closely related to the dispute: he acknowledges that his "only personal involvement in the making" of the loan was to approve the loan as a member of PeoplesBank's loan committee and to "authorize action to enforce [PeoplesBank's] contractual rights after the loan went into default." Doc. 57-2 at 3.[4] Thus, Kauffman acknowledges that he performed certain decision-making functions at PeoplesBank, such as approving the loan that serves as the source of this controversy and authorizing action to enforce PeoplesBank's rights under the Loan Agreement against Gurba, which is the injury of which Gurba now complains.

---

[4] Gurba doubles down on his allegations in his declaration, stating, among other things, that Kauffman assured him an independent appraisal would occur, that he would not have any exposure to liability, and that the collateral was more than enough to cover the loan. Doc. 23-1 at 3–5.

Thus, Kauffman is closely related to this dispute and his enforcement of the forum-selection clause was foreseeable. He may enforce the clause.

Doll may also enforce the forum-selection clause. Like Kauffman, she is closely related to the dispute, as Gurba alleges that she, as chief lending officer, enticed him into entering into the Loan Agreement, assured him that he would not be liable under the loan due to the represented collateral, told him that he would not face any liability under the loan because the Ferrari more than covered him, and advised him that PeoplesBank would arrange for an independent appraisal of the Ferrari. Like the cases above, Gurba alleges that based upon Doll's assurance, in part, he signed the Loan Agreement. Doll even signed the Loan Agreement, on behalf of PeoplesBank, in her capacity as "Sr. Vice President/Chief Lending Officer." Doc. 57-1 at 33. Further, in her declaration, although she denies advising Gurba that he need not worry about liability because the collateral was more than sufficient, she discusses some of her involvement with the loan, such as her communications with Gurba. Doc. 57-3 at 2–3.[5] As such, Doll is closely related to the dispute and her enforcement of the forum-selection clause in the Loan Agreement, which she signed on behalf of PeoplesBank, was foreseeable. She may enforce the clause.

Therefore, neither fraud nor overreaching induced the forum-selection clause's formation. Gurba fails to establish a "strong showing" that enforcement of the clause

---

[5] As with Kauffman, Gurba doubles down on his allegations with respect to Doll in his declaration. Doc. 23-1 at 3–5.

would be unfair or unreasonable. Further, along with PeoplesBank, Kauffman and Doll may enforce the clause.

### ii.   The Forum-Selection Clause is Mandatory

Next, the Court examines whether the forum-selection clause is mandatory or permissive. The Eleventh Circuit has looked to federal law in examining whether a forum-selection clause was mandatory or permissive in a diversity-jurisdiction action. *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004). While a "permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere," a "mandatory clause . . . 'dictates an exclusive forum for litigation under the contract.'" *Id.* (quoting *Snapper, Inc v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). A forum-selection clause that uses the word "shall" is mandatory, as "the use of the term 'shall' is one of requirement." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (holding that a forum-selection clause that used the term "shall" was mandatory), *abrogated on other grounds by Atl. Marine Constr.*, 571 U.S. at 49.

Here, the forum-selection clause states that any litigation arising from the Loan Agreement or any documentation referred to in the Loan Agreement "shall be commenced only in the Court of Common Pleas of York County, Pennsylvania." Doc. 57-1 at 31. Thus, the forum-selection clause uses the term "shall" and dictates an exclusive forum for litigation arising from the Loan Agreement or any documentation referenced in the Loan Agreement—the Court of Common Pleas of York County, Pennsylvania. Therefore, the forum-selection clause is mandatory.

### iii.   The Forum-Selection Clause Does Not Cover Counts II through VII

The Court also must determine whether the forum-selection clause covers Counts II through VII. The clause does not cover those claims.

Citing to several federal cases, PeoplesBank, Kauffman, and Doll argue that, even though Counts II through VII are not contractual claims, they arise from the Loan Agreement. Doc. 57 at 6–8. But each of those cited cases, only one of which is binding, involved forum-selection clauses that were broader than the forum-selection clause here. For example, in *Stewart Organization, Inc. v. Ricoh Corp.*, the Eleventh Circuit held that a forum selection clause included "all causes of action arising directly or indirectly from the business relationship evidenced by the contract" where the forum-selection clause referred to "any case or controversy arising under or in connection with this Agreement." 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc) (internal quotation marks and original emphasis omitted), *aff'd and remanded*, 487 U.S. 22 (1988). By contrast, the forum-selection clause here is more limited: it states only that "[a]ny litigation arising from this Agreement or any documentation referred to in this Agreement shall be commenced only in the Court of Common Pleas of York County, Pennsylvania." Doc. 57-1 at 31.

Although broad, the term "arising out of" is not all encompassing. *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011).[6] "A dispute does not 'arise out

---

[6] PeoplesBank, Kauffman, and Gurba presume that federal law applies in interpreting the forum-selection clause. Doc. 57 at 7–8. In an unpublished opinion, the Eleventh Circuit has held that the construction of a forum-selection clause is a matter of federal common-law, not the law of the state in which the federal court sits. *Cornett v. Carrithers*, 465 F. App'x 841, 842

of or in connection with' a contract just because the dispute would not have arisen if the contract 'had never existed.'" *Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 553 F.3d 1342, 1347 (11th Cir. 2008). In construing the term "arising out of," the Eleventh Circuit has explained that determining whether a dispute arises out of a contract entails an analysis of "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." *Princess Cruise Lines*, 657 F.3d at 1218 (internal quotation marks omitted). "'Arising out of' requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Id.* Courts have looked to these interpretations of "arising out of" when interpreting "arising from." *See*, *e.g.*, *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1367 n.16 (11th Cir. 2008) (noting no "significant difference" between "arising from" and "arising out of or pursuant to"); *Wexler v. Solemates Marine, Ltd.*, No. 16-CV-62704, 2017 WL 979212, at *6 (S.D. Fla. Mar. 14, 2017) (examining cases interpreting "arises out of" where the clause stated "arising from").

PeoplesBank, Kauffman, and Doll do not cite to any of these cases, argue that any claim was an immediate, foreseeable result of the performance of contractual

---

(11th Cir. 2012). *But see Wylie v. Kerzner Int'l Bah. Ltd.*, 706 F. App'x 577, 580 (11th Cir. 2017) ("It seems to us, then, that the analytical framework (and substantive law) governing the *forum non conveniens* inquiry in this diversity case depends on whether the *validity* of a forum-selection clause is distinct from, and antecedent to, its *enforceability*, or whether the validity of such a clause is just part of the federal law of enforceability . . . ."). Because PeoplesBank, Kauffman, and Doll rely upon federal law and Gurba does not dispute that reliance, the Court applies federal law.

duties, or argue that any claim is directly related to the performance of duties under the Loan Agreement. Focusing only on Count II when analyzing the breach-of-fiduciary-duty claims, they contend that Gurba alleges in that claim that PeoplesBank failed to fulfill its purported fiduciary duties with respect to the vehicle and induced him to sign for a loan. Doc. 57 at 7. As such, PeoplesBank, Kauffman, and Doll argue that "[t]hese claims clearly concern the Loan Agreement and [Gurba's] liability thereunder." *Id.* But the question is not whether any claim "concerns" the Loan Agreement or Gurba's liability under the Loan Agreement; the question is whether any claim "aris[es] from" the Loan Agreement or any documentation referenced in the Loan Agreement. They also vaguely contend that the Court will need to review the Loan Agreement's representations, promises, covenants, and integration clause. But an analysis of certain contractual provisions does not mean that the breach-of-fiduciary duty claims arise from the Loan Agreement or the documents referenced in the Loan Agreement.

Similarly, for the fraud-in-the-inducement claims, PeoplesBank, Kauffman, and Doll focus only on Count V to argue that Gurba alleges in that claim that he "was fraudulently induced to enter into the Loan Agreement by assurances that he would not be held personally liable" and that those alleged assurances directly contradict the Loan Agreement's provisions, including its integration clause. *Id.* at 7–8.

None of Gurba's claims is an immediate, foreseeable result of the performance of contractual duties under the Loan Agreement or documents referred in the Loan Agreement. He bases his breach-of-fiduciary-duty claims and his fraud-in-the-

inducement claims upon Kauffman's and Doll's assurance that he would not face liability under the loan as a result of the represented collateral, their representation that he would not face any liability because the vehicle more than covered him, and PeoplesBank's representation that it would arrange for an independent appraisal of the vehicle. And he alleges that he entered into the loan because of these assurances. Based on the assurances of Kauffman and Doll, he alleges that PeoplesBank, Kauffman, and Doll breached their fiduciary duties to him and that PeoplesBank acted fraudulently towards him to get him to enter into the loan. He also alleges that Doll, by offering these assurances "through" Kauffman and "at his direction and knowledge," acted fraudulently towards him to get him to enter into the loan. But the claims are not the immediate, foreseeable result of the performance of any contractual duty under the Loan Agreement. For example, a claim for fraud in the inducement arising from the described assurances is not an immediate and foreseeable result of PeoplesBank's obligation to lend $8,040,000 to Gurba and Welkowitz, as co-borrowers, under the Note or the obligation of Gurba and Welkowitz to pay principal and interest in the amount of $89,658.13 each month commencing on October 15, 2019.  Doc. 57-1 at 16. Thus, given the clause's limiting language, Gurba's allegations, and the terms of the Loan Agreement, Gurba's claims in Counts II through VII do not "aris[e] from" the Loan Agreement or the documents referenced therein.

Because the forum-selection clause does not cover Counts II through VII, the *forum non conveniens* arguments fails.[7]

### B. Gurba Fails to Allege Sufficient Facts to Support Personal Jurisdiction Over Kauffman and Doll

Next, the Court examines personal-jurisdiction. *See Schrenkel*, 2018 WL 5619358, at *8 n.7 ("A federal district court may decide a *forum non conveniens* issue prior to resolving a lack of personal jurisdiction issue."). Kauffman and Doll move to dismiss Counts III, IV, VI, and VII for lack of personal jurisdiction under Rule 12(b)(2). Doc. 57 at 10–14. As explained below, Gurba fails to allege sufficient facts to support personal jurisdiction over Kauffman and Doll.

Personal jurisdiction "concern[s] the extent of a court's power over the parties and fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). Federal Rule of Civil Procedure 12(b)(2) allows a party to raise, by motion, the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999)).

---

[7] Gurba seems to argue that PeoplesBank waived enforcement of the forum-selection clause because it sought to enforce the Pennsylvania judgment in state court in Pinellas County, Florida. Doc. 61 at 3. Gurba provides no authority to support the proposition that domesticating a foreign judgment waives enforcement of a forum-selection clause.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The court must accept the alleged facts as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Where the defendant submits evidence to the contrary, the burden shifts back to the plaintiff, *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2000), who must then "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint," *Future Tech. Today*, *Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The burden does not shift back to the plaintiff when a defendant's affidavit contains merely conclusory assertions that the defendant is not subject to jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). A court must construe all reasonable inferences in the light most favorable to the plaintiff when confronted with conflicting evidence. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); *Consol. Dev. Corp.*, 216 F.3d at 1291.

Determining whether personal jurisdiction exists over an out-of-state defendant involves a two-step analysis. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, a court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum-state's long-arm statute. *See Future Tech.*,

218 F.3d at 1249. Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* In determining whether jurisdiction comports with the Due Process Clause, the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'" *Id.*

In arguing that the Court lacks personal jurisdiction over them, Kauffman and Doll contend that Gurba fails to allege a prima facie case of personal jurisdiction. Doc. 57 at 12–13. Even if Gurba met his initial burden, they argue, their declarations adequately show lack of long-arm jurisdiction over them. *Id.* at 13. They also contend that haling Kauffman and Doll into court in Florida offends due process. *Id.* at 14.

Gurba responds that the Court has personal jurisdiction over Kauffman and Doll because "they transacted so many communications to Gurba into the State of Florida." Doc. 61 at 5. He asserts that Kauffman and Doll "went through" a "series of transactions, assurances and communications" on behalf of PeoplesBank to "gain Gurba as a signer to the Loan" and Gurba's business. *Id.* at 8. Kauffman and Doll reply that Gurba has failed to show that Kauffman and Doll engaged in substantial and not isolated business in Florida under Florida's long-arm statute. Doc. 64 at 2–3.

*i. Gurba Fails to Allege Sufficient Facts for General Jurisdiction under the Long-Arm Statute*

Florida's long-arm statute authorizes general jurisdiction and specific jurisdiction. *See* Fla. Stat. § 48.193(1)–(2). For general jurisdiction, Florida's long-arm statute provides: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." *Id.* § 48.193(2). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.*

Gurba's allegations do not specify whether the Court may exercise personal jurisdiction over Kauffman and Doll under the general-jurisdiction provision or the specific-jurisdiction provision of the long-arm statute. Instead, Gurba simply alleges that "[j]urisdiction is proper" over Kauffman, a Pennsylvania citizen, because Kauffman "made communications as a corporate officer of [PeoplesBank] to [Gurba] in the knowledge that such communications and assurances would be relied upon by [Gurba] within the State of Florida." Doc. 50 ¶¶4, 10. Similarly, Gurba alleges that "[j]urisdiction is proper" over Doll, a Pennsylvania citizen, because she "made communications as a corporate officer of [PeoplesBank] to [Gurba] in the knowledge that such communications and assurances would be relied upon by [Gurba] within the State of Florida." *Id.* at ¶¶5, 11. These allegations constitute Gurba's only effort to

expressly allege personal jurisdiction over Kauffman and Doll. Elsewhere in the Second Amended Complaint, Gurba alleges that he is a Florida citizen. Perhaps tellingly, Gurba does not highlight any allegations to argue that he meets his initial burden. Rather, he points to evidence.

Gurba does not allege that Kauffman or Doll engaged in substantial and not isolated activity within Florida. He does not allege that Kauffman or Doll is a Florida citizen, either; he alleges that they are Pennsylvania citizens. His allegations largely focus on certain representations, including that he would not be liable under the loan due to the represented collateral, that the collateral was sufficient, and that PeoplesBank would arrange for an independent appraisal of the vehicle. These allegations do not reveal substantial and not isolated activity by Kauffman or Doll within Florida. And although he alleges that Kauffman and Doll, on behalf of PeoplesBank, solicitated earlier loans related to Florida-based Big Red Companies, of which Gurba served as manager and president, these allegations do not indicate substantial and not isolated activity in Florida.

As such, Gurba fails to allege sufficient facts to subject Kauffman or Doll to general jurisdiction under Florida's long-arm statute.[8] This failure is fatal to Gurba's attempt to invoke general jurisdiction under Florida's long-arm statute, as he "must

---

[8] Two other instances exist where the exercise of general jurisdiction over an individual is proper: (1) where the individual consents to the forum's jurisdiction; and (2) where the individual is served with process in the forum. *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1350 (S.D. Fla. 2017) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality opinion)). Neither basis applies here.

allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts" to Kauffman and Doll to make a prima facie showing of the statute's inapplicability. *Future Tech.*, 218 F.3d at 1249; *see also Posner*, 178 F.3d at 1214 ("A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction.").

> ## ii. *Gurba Fails to Allege Sufficient Facts for Specific Jurisdiction under the Long-Arm Statute*

Because Gurba also seeks to invoke specific-jurisdiction under the long-arm statute, the Court must examine specific jurisdiction under the statute. "[S]pecific jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352. The long-arm statute provides, in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . .
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

> a. The defendant was engaged in solicitation or service
> activities within this state . . . .

Fla. Stat. § 48.193(1)(a)(1), (2), (6).

Gurba's allegations fail to expressly identify his intended basis for specific jurisdiction under § 48.193(1)(a). However, in responding, Gurba contends that the subsections excerpted above—§ 48.193(1)(a)(1), (2), and (6)—apply. Doc. 61 at 6, 8. As such, the Court examines his allegations under those subsections. Once again, he fails to highlight any allegations or argue that his allegations satisfy his initial burden.

Preliminarily, "[i]n Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808. Gurba does not address whether his allegations state claims in the context of this analysis. Regardless, even if Gurba sufficiently states his claims, he fails to allege sufficient facts to support specific jurisdiction over Kauffman or Doll under § 48.1931(1)(a)(1), (2), or (6).

The Court begins with § 48.193(1)(a)(2). For § 48.193(1)(a)(2), "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida." *Louis Vuitton Malletier*, 736 F.3d at 1353 (alterations in original) (original emphasis removed). Thus, a defendant need not be physically present to commit a tortious act in Florida under § 48.193(1)(a)(2). *Acquadro*

*v. Bergeron*, 851 So. 2d 665, 670 (Fla. 2003).[9] And "[c]omitting a tortious act" in Florida may occur "through the nonresident defendant's telephonic, electronic, or written communications into Florida." *Id.* The cause of action must arise from the communications. *Id.*

As stated above, Gurba alleges that personal jurisdiction over Kauffman and Doll is proper because both defendants, as Pennsylvania citizens, communicated as corporate officers of PeoplesBank with Gurba with knowledge that Gurba would rely upon their communications and assurances in Florida. Gurba's allegations identify him as a Florida citizen and describe certain alleged communications that enticed or assured him. He alleges that Kauffman and Doll breached their purported fiduciary duties to him through their assurances to him and that they acted fraudulently towards him in giving those assurances. But, although he alleges that Kauffman and Doll communicated with knowledge that he would rely on those communications in Florida, he does not allege sufficient jurisdictional facts to indicate that he actually relied upon any communications in Florida, that Kauffman or Doll otherwise committed a tortious act within Florida, or that an out-of-state tortious act by Kauffman or Doll caused injury in Florida. Thus, Gurba fails to allege sufficient facts to subject Kauffman or Doll to specific jurisdiction under § 48.193(1)(a)(2).

---

[9] *Acquadro* analyzed the tortious-acts provision of the long-arm statute, which, at the time, was codified at § 48.193(1)(b), Florida Statutes. 851 So. 2d at 670. The Florida Legislature moved this provision to its present location at § 48.193(1)(a)(2) in 2013, but this amendment did not affect the provision's language or change its substance. *Louis Vuitton*, 736 F.3d at 1353 n.7.

Next, the Court examines § 48.193(1)(a)(1). Gurba does not allege that Kauffman or Doll, personally or through an agent, operated, conducted, engaged in, or carried on a business or business venture in Florida or had an office or agency in Florida. He also fails to allege that the activities of either defendant indicate a course of business activity in Florida for pecuniary benefit. *See Sculptchair,* 94 F.3d at 627 ("In order to establish that a defendant was carrying on a business or business venture in the state . . . '[t]he activities of the [defendant] sought to be served must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'") (alterations in original)). As such, Gurba fails to allege sufficient facts to subject Kauffman or Doll to specific jurisdiction under § 48.193(1)(a)(1).

For § 48.193(1)(a)(6), Gurba does not allege that Kauffman or Doll caused an injury to him in Florida arising out of an act or omission outside of Florida where Kauffman or Doll was engaged in solicitation or service activities within Florida. He does not sufficiently state where the purported injury occurred. And although he alleges that Kauffman and Doll, as Pennsylvania citizens who acted on behalf of PeoplesBank, solicited the loan in this action and earlier loans related to the other Florida-based businesses, he does not allege that Kauffman or Doll caused an injury in Florida that arose from an act or omission that occurred outside of Florida, with the solicitation occurring in Florida. Thus, Gurba fails to meet his initial burden of alleging sufficient facts to subject Kauffman or Doll to specific jurisdiction under § 48.193(1)(a)(6).

Therefore, Gurba fails to allege sufficient facts to support specific jurisdiction over Kauffman or Doll under § 48.1931(1)(a)(1), (2), or (6). This failure is fatal to his attempt to invoke specific jurisdiction under Florida's long-arm statute. *See Future Tech.*, 218 F.3d at 1249; *see also Posner*, 178 F.3d at 1214.

In sum, Gurba fails to allege sufficient facts to support general jurisdiction or specific jurisdiction over Kauffman or Doll under the long-arm statute. As such, the Court need not evaluate whether Gurba satisfies the Due Process prong of the personal jurisdiction inquiry, *Future Tech.*, 218 F.3d at 1249 (stating that a court must examine whether the exercise of jurisdiction comports with the Due Process Clause only after determining that the forum-state's long-arm statute has been satisfied), and the Court will dismiss Counts III, IV, VI, and VII for lack of personal jurisdiction, *see, e.g., Doe v. Cigna Corp.*, No. 8:17-cv-700-SCB-AEP, 2017 WL 3065112, at *2–3 (M.D. Fla. July 19, 2017) (dismissing the complaint, without prejudice, because the complaint failed to allege sufficient facts to support a prima facie case of personal jurisdiction under Florida's long-arm statute); *Pavlovich v. New York*, No. 11-80969-CIV, 2011 WL 3878353, at *1 (S.D. Fla. Sept. 2, 2011) ("Plaintiff has failed to allege personal jurisdiction and the Court must dismiss the complaint."); *Reiss v. Clateman*, No. 8:08-cv-69-SCB-MSS, 2008 WL 398949, at *1 (M.D. Fla. Feb. 12, 2008) (dismissing the complaint because it "faile[d] to plead sufficient material facts to establish a basis for personal jurisdiction over Defendants."); *Holguin v. Celebrity Cruises, Inc.*, Nos. 10-202-15-CIV, 10-20545-CIV, 10-20546-CIV, 2010 WL 6711377, at *1 (S.D. Fla. July 19, 2010) (dismissing the complaint for lack of personal jurisdiction because the plaintiff's

allegations concerning personal jurisdiction were mere legal conclusions); *Mitchell v. Fairfield Nursing & Rehab. Ctr., LLC*, No. 2:15-cv-188-MHH, 2016 WL 1365586, at *9 (N.D. Ala. Apr. 6, 2016) ("Because the factual allegations of personal jurisdiction in Ms. Mitchell's amended complaint are insufficient, the Court has granted the moving defendants' motion to dismiss for lack of personal jurisdiction.").

As such, the Court will dismiss Counts III, IV, VI, and VII and provide Gurba an opportunity to amend his allegations to state sufficient facts, if they exist, to support personal jurisdiction over Kauffman and Doll. *See Doe*, 2017 WL 3065112, at *3 (providing the plaintiff leave to amend).[10]

### C. The Court Denies the Res Judicata Argument at This Stage of the Litigation

Next, PeoplesBank, Kauffman, and Doll argue that res judicata bars Counts II through VII. Doc. 57 at 14–20. The Court denies this argument, as presented, at this stage of the litigation.

Res judicata operates to preclude litigation of matters that were raised, or should have been raised, in an earlier lawsuit. *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935

---

[10] In amending, Gurba should also clean up some of his allegations. For example, each count recites nearly identical factual allegations, rather than incorporating and realleging an earlier factual section, which results in the Second Amended Complaint spanning 40 pages. Also, Gurba's phrasing of some of his allegations renders those allegations unclear. Take, for example, this allegation: "Such relationship between PEOPLES BANK, through the actions of DOLL and KAUFFMAN, had made GURBA a client of PEOPLES BANK, and thus owed certain duties of trust and reliance were created." Doc. 50 ¶18. Here is another example: "DOLL, with full knowledge and supervision of KAUFFMAN, made such representations referred to the vehicle which was being collateralized was more than sufficient, knew that they (KAUFFMAN and DOLL) had a duty to GURBA of truthfulness and diligence about the vehicle asset." *Id.* at ¶68.

F.2d 1187, 1192 (11th Cir. 1991). Res judicata is an affirmative defense. *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense," if that defense "clearly appears" on the complaint's face. *Id.*

PeoplesBank, Kauffman, and Doll argue that Counts II through VII "arise from the same loan transaction that is the basis of the Pennsylvania judgment." Doc. 57 at 16. In support, they offer the declaration of Steven J. Adams, an attorney who apparently represented PeoplesBank in *PeoplesBank v. Gurba*, Case No. CI-2020-02176, an action that PeoplesBank commenced in the Court of Common Pleas of Lancaster County, Pennsylvania, on February 24, 2020. Doc. 57-1 at 1. PeoplesBank, Kauffman, and Doll attach several court filings from the Pennsylvania action to Adams's declaration, including the Complaint for Confession of Judgment, a "Notice Under Rule 2958.1 of Judgment and Execution Thereon," and an "Affidavit of Service of Notice under Rule 2958.1 of Judgment and Execution Thereon." *Id.* at 65–68, 93, 100. In ruling on this Rule 12(b)(6) attack, the Court may take judicial notice of documents filed in the Pennsylvania proceeding, without converting the motion to a motion for summary judgment, only "for the limited purpose of recognizing the 'judicial act' taken, or the subject matter of the litigation and issues decided (as opposed to adopting the findings of fact made therein)." *Martin K. Eby Constr. Co., Inc. v. Jacobs Civil, Inc.*, No. 3:05-cv-394-TJC-TEM, 2006 WL 1881359, at *1 (M.D. Fla. July 6, 2006).

Although PeoplesBank, Kauffman, and Doll highlight certain allegations in the Motion to Dismiss, they do not expressly argue that Gurba's allegations indicate the existence of res judicata, with the defense clearly appearing on the face of the Second Amended Complaint.[11] Further, their argument relies heavily upon Adams's declaration to provide context for the attached records. For example, they cite to Adams's declaration to explain that, although Gurba could have filed a petition to open or strike the confessed judgment that alleged "the very fraudulent inducement and breach of fiduciary duty claims he has alleged here," he chose not to do so. Doc. 57 at 17. In the cited paragraphs, Adams's declaration recites case law about confessed judgments under Pennsylvania law, explains what the Pennsylvania case docket entries "show," and states that Gurba had not filed a petition to open or strike the confessed judgment in the Pennsylvania case as of the date of Adams's declaration. Doc. 57-1 at 11–12.

As another example, PeoplesBank, Kauffman, and Doll cite to Adams's declaration to explain that, as a matter of "Pennsylvania confession of judgment practice," the "judgment is the docket entry in the court records reflecting the judgment." Doc. 57 at 19. In this cited portion of the declaration, Adams explains that,

---

[11] In replying to Gurba's argument that res judicata does not apply because he learned that the vehicle was a reproduction vehicle in July 2020, after the Bank obtained the Pennsylvania judgment. PeoplesBank, Kauffman, and Doll claim that Gurba's allegations indicate that he knew that PeoplesBank was pursuing collection against him in December of 2019. Doc. 64 at 7. This argument does not change the reliance on Adams's declaration, however, or the recognition that PeoplesBank, Kauffman, and Doll do not expressly argue in the Motion to Dismiss that Gurba's allegations indicate the existence of res judicata, with the defense clearly appearing on the face of the Second Amended Complaint.

"[a]s a matter of Pennsylvania law," the "Prothonotary's notation of the docket of the [Pennsylvania] Confession of Judgment Action of the entry of judgment against Gurba as requested in Confession of Judgment" constitutes the "judgment." Doc. 57-1 at 8 n.3. Similarly, in other portions of the declaration to which PeoplesBank, Kauffman, and Doll cite, Doc. 57 at 17, Adams explains that the Confession of Judgment that he filed complied with the Pennsylvania Rules of Civil Procedure; that no act prohibited him from signing the Confession of Judgment; and the form of notice provided to Gurba complied with the Pennsylvania Rules of Civil Procedure. Doc. 57-1 at 9–10.

Thus, Adams's declaration extends beyond merely authenticating the provided documents from the Pennsylvania action. Given the reliance of PeoplesBank, Kauffman, and Doll upon Adams's declaration—a form of evidence—in this Rule 12(b)(6) res judicata attack, the Court denies this argument. This argument, as styled, is more appropriate for summary judgment. Indeed, Adams indicates that he offers his declaration in support of the Motion to Dismiss and a motion for partial summary judgment. *Id.* at 1. Assuming that PeoplesBank, Kauffman, and Doll (provided that a third amended complaint brings claims against Kauffman and Doll) raise res judicata as an affirmative defense in an answer, they may seek summary judgment on the basis of res judicata at a later stage of the litigation.

### D. The Court Denies the Integration Clause Argument at This Stage of the Litigation

PeoplesBank, Kauffman, and Doll argue that the integration clauses in the Note and the Loan Agreement bar "Gurba's core allegation that he was told he would not

be personally liable (because the value of the collateral far exceeded the amount of the loan)." Doc. 57 at 20.  They point out that the Note and the Loan Agreement provide that Gurba and Welkowitz are jointly and severally liable for the debt. *Id.* Because these documents are central to Gurba's claims and the parties do not dispute their authenticity, the Court may consider them. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Section 11 of the Note, entitled "Co-Borrowers," provides, in relevant part, that "Borrower" refers to Welkowitz and Gurba, jointly and severally and individually and collectively, as co-borrowers. Doc. 57-1 at 38. It reiterates that each of them is jointly and severally liable for the "Obligation" and that PeoplesBank, as "Lender," may proceed against either of them without waiving its right to proceed against the other. *Id.* The Loan Agreement contains a similar provision. *Id.* at 18.

After highlighting this language, PeoplesBank, Kauffman, and Doll contend that the integration clauses in the Note and the Loan Agreement bar Gurba's "allegations that he was promised that he would not be personally liable." Doc. 57 at 21. Section 25 of the Note, labeled "Entire Agreement," provides that the Note "contains the entire understanding of the parties concerning the subject matter hereof, and no representations, inducements, promises or agreements, oral or otherwise, not embodied herein shall be of any force or effect whatsoever." Doc. 57-1 at 43. And Section 9.11 of the Loan Agreement, entitled "Understandings of the Parties," similarly provides that the Agreement and any documentation referred to in the Agreement "are the complete understandings among Lender and Borrowers relating

to the transactions referred to in this Agreement. Any amendment to this Agreement or any documentation referred to in this Agreement must be executed in writing by Lenders and Borrowers." *Id.* at 29.

Based on these clauses in the Note and the Loan Agreement, PeoplesBank, Kauffman, and Doll argue that Gurba "seeks to avoid personal liability by introducing several alleged pre-contractual representations and inducements—exactly what the integration clauses were designed to prevent." Doc. 57 at 21. Relying upon Pennsylvania law because of the choice-of-law clauses in the Note and the Loan Agreement, PeoplesBank, Kauffman, and Doll argue that Pennsylvania courts dismiss fraudulent-inducement claims "with regularity" when the contract covers the subject matter and contains an integration clause.[12] *Id.* at 22.

In response, Gurba contends that the integration clauses have "no effect" because he has "clearly shown" that he "never would have entered into such agreements without the fraudulent inducement involving the collateral."[13] Doc. 61 at

---

[12] Section 9.18 of the Loan Agreement provides: "This Agreement and all documentation referred to in this Agreement shall by governed by and interpreted under the laws, but not the conflict of laws, of the Commonwealth of Pennsylvania." Doc. 57-1 at 30. The Note provides: "This Note shall be deemed to be a contract made under the laws of the Commonwealth of Pennsylvania and shall be construed in accordance with the laws of the Commonwealth." *Id.* at 42.

[13] Gurba points to the numerous e-mails as evidence that "the promises made as to the outside valuation of the vehicle [m]eans that the clauses in the agreement a Kurd [sic] under the cloud of fraud and should not and could not be enforced." Doc. 61 at 12. But Gurba provides no argument as to why the Court, in ruling on this Rule 12(b)(6) argument, should look beyond the four corners of the complaint to this evidence. For example, he does not argue that the evidence is central to his claims and undisputed, and, given the nature of this evidence, the Court declines to assume that it is undisputed. As such, the Court declines to consider this evidence at this stage of the litigation.

12. He points to two exceptions to the parol evidence rule, under which a court may admit parol evidence. *Id.* at 13. In doing so, he points to Florida law, rather than Pennsylvania law. *Id.*

Regardless of whether Pennsylvania law or Florida law applies, a review of the Motion to Dismiss, Gurba's response, and the reply demonstrate that this argument is more appropriate for summary judgment. Both Florida law and Pennsylvania law recognize exceptions to the parol evidence rule. *Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000) (explaining that Florida law recognizes an "inducement" exception to the parol evidence rule, which requires the oral agreement to be shown by evidence that is clear, precise, and indubitable); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1408 (3d Cir. 1991) ("[W]e recognize that evidence of fraud in the inducement will suspend the parol evidence rule because fraud prevents formation of a valid contract—'no contract, no parol evidence rule.'"). Gurba intends to rely on an exception to the parol evidence rule to introduce evidence of some type of earlier agreement—evidence that the Court may consider upon summary judgment, but not in ruling on this Rule 12(b)(6) argument. Addressing this argument at summary judgment will allow the Court to evaluate evidence of any earlier agreements or representations in determining whether to apply the parol evidence rule and to determine, based on the evidence, the scope and applicability of the integration clauses. *See Zokaites v. Balistreri Realty, Inc.*, No. 06-61244-CIV-COHN/SNOW, 2006 WL 8431529, at *4 (S.D. Fla. Nov. 27, 2006) ("[A]n inquiry into whether the contracts at issue contained integration clauses, and the subject matter covered by those

contracts, is precisely the kind of factual inquiry that is not appropriate under the legal standard for a [m]otion to [d]ismiss.").

Therefore, the Court will deny this argument at this stage of the litigation.

### E. Gurba Fails to Allege a Claim for Breach of Fiduciary Duty against PeoplesBank

Finally, PeoplesBank, Kauffman, and Doll move to dismiss the breach-of-fiduciary-duty claims (Counts II, III, and IV) for failure to state a claim under Rule 12(b)(6). Doc. 57 at 23–25. They argue that these claims fail because, under Pennsylvania law, a lender generally does not serve as a fiduciary of a borrower. *Id.* at 23–24. In response, Gurba generally argues that special circumstances can create a fiduciary duty under Florida law, and he reiterates that Kauffman and Doll allegedly enticed him to enter into the Loan Agreement. Doc. 61 at 14–18. PeoplesBank, Kauffman, and Doll reply that Gurba's allegations do not support the existence of a fiduciary duty. Doc. 64 at 5–6.

Preliminarily, the Motion to Dismiss consistently emphasizes that a lender-borrower relationship does not create a fiduciary duty. Although Kauffman and Doll serve as officers of the bank, PeoplesBank, neither Kauffman nor Doll, is the lender. Similarly, the Motion to Dismiss emphasizes that "banks do not owe borrowers fiduciary duties." Doc. 57 at 23. To state the obvious, neither Kauffman nor Doll is a bank. PeoplesBank, Kauffman, and Doll do not provide any cogent argument for why the cited caselaw, which focuses on a lender-borrower relationship, extends to Kauffman and Doll, as officers of PeoplesBank, when PeoplesBank was the lender. As

such, the Court will deny the Motion to Dismiss to the extent that it seeks the dismissal of Counts III and IV for breach of fiduciary duty.

Because the Loan Agreement's choice-of-law clause provides that Pennsylvania law applies, the Court looks to Pennsylvania law. Under Pennsylvania law, "[a] fiduciary duty is the highest duty imposed by law." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819 (Pa. 2017). A lender is not a fiduciary of the borrower. *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992), *aff'd*, 981 F.2d 1248 (3d Cir. 1992). "This principle stems from the presumption that the relationship between lenders and borrowers is conducted at arms-length and the parties are each acting in their own interest." *Id.*

"Although a lender does not ordinarily owe a fiduciary relationship to a borrower, a fiduciary relationship may arise if the lender gains substantial control over the borrower's business." *Id.; see Yenchi*, 161 A.3d at 822 (stating that a fiduciary relationship may arise in the context of consumer transactions only where a party "cedes decision-making control to the other party"). Control over the borrower exists where "the lender was involved in the actual day-to-day management and operations of the borrower" or where "the lender had the ability to compel the borrower to engage in unusual transactions." *Temp-Way*, 139 B.R. at 318. But fiduciary duties do not arise simply because a party relies upon or pays for another's specialized skill. *Yenchi*, 161 A.3d at 822.

Here, Gurba fails to state a claim for breach of fiduciary duty against PeoplesBank under Pennsylvania law because he fails to allege facts indicating the

39

existence of a fiduciary relationship. *See Snyder v. Crusader Serv. Corp.*, 231 A.3d 20, 32 (Pa. Super. 2020) (listing the "existence of a fiduciary relationship" as the first element for a breach-of-fiduciary-duty claim under Pennsylvania law). He alleges that PeoplesBank held a fiduciary relationship with him as a result of the previous "other loan instances" between PeoplesBank and "the Welkowitz and [Gurba] related entities." Doc. 50 ¶70. He alleges that he "owed certain duties of trust and reliance were created [sic]" because he was a client of PeoplesBank, as PeoplesBank had "taken on prior loans from other lenders for the trucking business involving" him and Welkowitz. *Id.* at ¶¶17–18. Thus, Gurba alleges that PeoplesBank had a fiduciary duty to him because he was a client of PeoplesBank as a result of PeoplesBank lending money to companies in which he and Welkowitz had involvement.

These allegations do not sufficiently allege the existence of a fiduciary relationship under Pennsylvania law. First, as alleged, PeoplesBank previously loaned money to the trucking companies, not to Gurba. Regardless, PeoplesBank's status as a lender, both in any earlier transaction and in the instant transaction, does not create a fiduciary relationship. He neither alleges nor argues that, under Pennsylvania law, PeoplesBank gained substantial control over his business, either through involvement in the day-to-day management and operations or through an ability to compel Gurba to engage in "unusual transactions." As such, his breach-of-fiduciary-duty claim against PeoplesBank fails under Pennsylvania law.[14]

---

[14] Where a fiduciary duty does not exist as a matter of law, Pennsylvania courts have nonetheless recognized that equity may compel the existence of a fiduciary relationship in

In arguing that Florida law applies because diversity jurisdiction serves as the basis for the Court's subject-matter jurisdiction, Gurba does not respond to the choice-of-law clause. But, even if the Court applies Florida law, he fails to state a claim for breach of fiduciary duty against PeoplesBank because he fails to allege facts indicating that PeoplesBank had a fiduciary duty. *See Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.*, 32 So. 2d 111, 116 n.2 (Fla. 2d DCA 2009) (stating that the first element for a breach-of-fiduciary-duty claim under Florida law is the existence of a fiduciary duty).

Under Florida law, the relationship between a bank and its borrower is generally "that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). However, courts have found fiduciary relationships to exist in Florida under "special circumstances." *SLM Fin. Corp. v. Castellano*, No. 2:11-cv-105-JES-SPC, 2012 WL 717858, at *2 (M.D. Fla. Mar. 6, 2012). These "special circumstances" include: (1) "where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and relying on the bank so to counsel and inform him"; (2) where the lender (i) takes on additional services for a customer, (ii) receives any greater economic benefit than from a typical transaction, or

---

limited circumstances. *Yenchi*, 161 A.3d at 633. Pennsylvania courts have found fiduciary duties where "the relative position of the parties is such that one has the power and means to take advantage of, or exercise undue influence over, the other." *Id.* And a fiduciary relationship "appears when the circumstances make it certain that the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Id.* (internal quotation marks omitted). Gurba does not allege an unequal position between the parties; he points only to his purported status as a client as a result of PeoplesBank previously loaning money.

(iii) exercise extensive control; (3) "where the borrower asked the bank loan officer a legal question 'thus creating a position of superiority and influence on the part of the bank in providing the information"; and (4) where the lender provided financial advice concerning a possible investment to the borrower, which imposed a "higher duty" on the bank. *Id.* (internal quotation marks and citations omitted).

Here, Gurba fails to allege any "special circumstances" that would take his relationship with PeoplesBank outside of the typical lender-creditor relationship, under which PeoplesBank owes no fiduciary duties to Gurba. He does not allege that PeoplesBank knew, or had reason to know, that he placed his trust and confidence in the bank and relied on the bank to counsel and inform him. Instead, he merely alleges that he was "owed certain duties of trust and reliance" because he was a client of a lender.[15] Doc. 50 ¶18. Similarly, he does not allege that PeoplesBank took on additional services for him, received a greater economic benefit than a usual transaction, or exercised extensive control. Nor does he allege that he asked a bank loan officer a legal question or that PeoplesBank provided him with financial advice about a possible investment. Again, he grounds the alleged fiduciary duty in his status as a client as a result of PeoplesBank lending money to companies in which he and Welkowitz had involvement. No argument in Gurba's response, such as his argument that PeoplesBank was clearly "in a superior business recommendation" or that it

---

[15] Also insufficient is Gurba's allegation that Doll knew that Kauffman and Doll had a duty of truthfulness. Doc. 50 ¶68. Nor is his allegation that Kauffman and Doll built a "special relationship" with him as a result of earlier loans with PeoplesBank sufficient. *Id.* at ¶17.

received "the extensive the greater [sic] financial benefit," persuades the Court otherwise. Doc. 61 at 15.

Therefore, because Gurba fails to allege sufficient facts for his breach-of-fiduciary duty claim against PeoplesBank, the Court will dismiss that claim. However, because the lender-is-not-a-fiduciary-of-a-borrower rule is not absolute, the underlying facts and circumstances may allow Gurba to state a claim for breach of fiduciary duty. As such, the Court will give him leave to amend this claim. *See Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (stating that a court should freely give leave to amend where the underlying facts or circumstances may be a proper subject of relief); *see also Pinnacle Adver. & Mktg. Grp., Inc. v. Pinnacle Adver. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021) (explaining that district courts have broad discretion to allow pleading amendments).[16]

## IV.    CONCLUSION

Based on the above analysis, the Court will dismiss Count II, without prejudice, for failure to state a claim, and dismiss Counts III, IV, VI, and VII, without prejudice, as a result of Gurba's failure to allege sufficient facts to support personal jurisdiction

---

[16] Of course, if Gurba pursues amendment, the Court reminds Gurba's counsel that, by presenting any amended pleading to the Court, he certifies that, to the best of his knowledge, information, and belief, formed after a reasonable inquiry under the circumstances, the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support following a reasonable opportunity for additional investigation or discovery. Fed. R. Civ. P. 11(b)(2).

over Kauffman and Doll. In all other respects, the Court denies the Motion to Dismiss. The Court will grant Gurba leave to correct the identified deficiencies.

Finally, the Court will lift the stay of this action. The parties must file an amended case management report that proposes new deadlines for discovery, dispositive motions, and every subsequent event of the litigation. PeoplesBank also moved for summary judgment on Count I (Doc. 70). Because PeoplesBank may file only one motion for summary judgment and, at this juncture, at least one other claim against PeoplesBank survives (Count V), the Court denies that motion, without prejudice, to the right of PeoplesBank to move for summary judgment on any claim or defense later in this litigation.

Accordingly, it is **ORDERED**:

1. Defendants' Dispositive Motion of Defendants to Dismiss Counts II through VII of Plaintiff's Second Amended Complaint (Doc. 57) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. Count II (Breach of Fiduciary Duty against PeoplesBank) is **DISMISSED**, **without prejudice**, for failure to state a claim.

3. Counts III (Breach of Fiduciary Duty against Kauffman), IV (Breach of Fiduciary Duty against Doll), VI (Fraud in the Inducement against Kauffman), and VII (Fraud in the Inducement against Doll) are **DISMISSED**, **without prejudice**, for lack of personal jurisdiction because

Gurba fails to allege sufficient facts to support general jurisdiction or specific jurisdiction over Kauffman or Doll under the Florida long-arm statute.

4. In all other respects, the Motion to Dismiss is **DENIED**.

5. The Court grants Gurba leave to file a third amended complaint, which cures the deficiencies discussed in this order, within **FOURTEEN (14) DAYS** from the date of this order. Failure to file a third amended complaint within the time provided will result in this action proceeding on Counts I and V only.

6. The Court **LIFTS** the stay of this action. The Clerk is directed to **REOPEN** this case.

7. The parties shall file an amended case management report on or before **January 13, 2023**.

8. Defendant PeoplesBank's Renewed Motion for Summary Judgment on Count I (Doc. 70) is **DENIED**, without prejudice.

**DONE AND ORDERED** in Tampa, Florida on December 23, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

45